Cupp v. Commonwealth.

---

CASE 7—INDICTMENT—FEBRUARY 28.

## Cupp v. Commonwealth.

87    35
f123   414
124   364

APPEAL FROM GRAVES CIRCUIT COURT.

1. INDICTMENT—AIDERS AND ABETTORS.—The actual doer of a criminal act and one present aiding and abetting may be jointly indicted, both being guilty of the same offense, the one as principal and the other as accessory, and it makes no difference that under the statute the actual doer may be guilty of a felony, while the one present aiding and abetting is guilty of a misdemeanor.

2. VERDICT.—Appellant and B were jointly indicted for willfully and maliciously cutting another with intent to kill. The indictment contains three counts. In the first both are charged with the cutting. In the second B is charged therewith, and appellant with being present counseling, aiding or abetting. In the third appellant is charged as principal, and B as aider or abettor. By the verdict appellant was found guilty "as charged in the indictment," and his punishment fixed at confinement in the penitentiary, and B was found guilty of aiding and abetting, as charged in the indictment, and his punishment fixed at fifty dollars. Held—That the verdict is sufficiently definite and certain.

3. EVIDENCE.—Whether the prosecutor did or did not use certain profane and insulting language, which both the defendants, in contradiction of him, swore he did use, had an important bearing upon the defense, and it was, therefore, error to the prejudice of appellant to permit the statement of another witness that he knew the moral character of the prosecutor, which had not been attacked by the defense, and that he

Cupp v. Commonwealth.

had never heard him use any profane language, as such testimony was calculated in an illegal manner to support the testimony of the prosecution, and discredit the testimony and defense of the accused.

4. THE COMMONWEALTH'S ATTORNEY, as he began his argument to the jury, called the prosecutor in front of the jury and said to them, putting his hand on the prosecutor's face: "Gentlemen, look at that scar on his face; is that worth only fifty dollars?" The defendants objected. *Held*—That the Criminal Code prescribes the mode and order in which testimony may be given to the jury, and courts can not afford to permit a departure therefrom, when the object or effect is to give to either party an undue advantage of the other.

5. IMPROPER COMMENT OF COURT ON INSTRUCTION.—The Commonwealth's Attorney proposing, in the course of his argument, to talk about the instruction as to self-defense, the court, addressing him in presence of the jury, said, "Never mind. I withdraw that instruction." The defendants objecting, the court said, again addressing the attorney in the presence of the jury, "The defendants object; let the instruction go for what it is worth." *Held*—That if the court had failed or refused to give that instruction, it would have been a reversible error, but it would have been far better for the defendants for the court to have withheld it than to accompany it with the comments made. It is clear, therefore, that the defendants did not have a fair and impartial trial.

ROBERTSON & SMITH FOR APPELLANT.

An indictment is defective, on the ground that it charges more than one offense, when in the first count A and B are charged with cutting and wounding with intent to kill; in the second count "A" is charged with the cutting, and "B" with aiding and abetting, and in the third count "B" is charged with cutting, and "A" with aiding and abetting. (Criminal Code, sections 126, 127, 257; Commonwealth v. Patrick, 80 Ky., 605; Coppage v. Commonwealth, 3 Bush, 532.)

P. W. HARDIN FOR APPELLEE.

The indictment does not charge different offenses within the meaning of sections 126 and 127 of Criminal Code, but different degrees of the same offense as authorized by sections 262, 263, 264 of Criminal Code.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, Charles Cupp, was, jointly with Bob Cupp, indicted for the offense of willfully and maliciously cutting with a knife Morrow Kitts, with intention to kill him, of which he did not die. The

indictment contains three counts. In the first both of them are charged with the cutting; in the second, Robt. Cupp is charged therewith, and appellant with being present, counseling, aiding or abetting; and in the third, appellant is charged as principal, and Bob Cupp as aider or abettor. By the verdict, appellant was found guilty as charged in the indictment, and his punishment fixed at confinement in the penitentiary, and Bob Cupp guilty of aiding and abetting as charged in the indictment, and his punishment fixed at fifty dollars.

It was made ground of demurrer, and is contended in argument, that the indictment is defective, because what is called the principal offense, and the offense of aiding or abetting, can not, because not authorized by section 127, Criminal Code, be charged in one indictment. The fallacy of that position consists in the assumption that there are two, when in fact but one offense is charged in the indictment. Section 2, article 6, chapter 29, General Statutes, under which the indictment was found, provides that if any person shall willfully and maliciously cut another with a knife, or other deadly weapon, with intention to kill, if the person cut die not thereby, shall be confined in the penitentiary, and any one who shall counsel, aid or abet in the commission of the offense shall be fined or confined in jail, or both, in the discretion of the jury. "By the common law, all persons present giving aid and comfort to another committing an offense, even a felony, are regarded as principals; that is, as in legal contemplation doing the deed. Therefore, if a statute makes the doing of a thing criminal, it in-

cludes, with the actual doer, persons who are present lending their countenance and aid." (Bishop on Statutory Crimes, section 135.)

It does not make any difference that while the actual cutting is made by the statute a felony, the one present aiding and abetting is guilty only of a misdemeanor; for both are guilty of the same offense, the one as principal and the other as accessory, and to require two distinct indictments and two trials, when the circumstances of the offense would have to be stated in each indictment and proved at each trial, would be needless, and certainly is not required by the Code. In the case of the Commonwealth v. Patrick, 80 Ky., 605, referred to by counsel, the indictment was held bad, not because both the principal and accessory were charged in it, but for the reason that the offense, being a single act of shooting, could not be done by both, but that one being the principal and the other accessory, or aider or abettor, they should have been so respectively charged. But in the indictment, in this case, the defendants are charged alternatively as principal and as aider or abettor, which may be properly done under the Code.

It seems to us the jury could not have used language more definite and certain than was used in their verdict, for no one could be misled or in doubt as to their meaning.

It appears that on the occasion of the cutting, which was done after night, the defendants, Bob, about eighteen, and Charles, about sixteen years of age, and several other boys, were, without objection, sitting around the stove in the back part of a grocery store of which

Kitts, the person injured, had temporary charge. A person present, in narrating a previous occurrence in which a small brother of the defendants was an actor, called him a little devil, at which Bob took offense, when, in the language of the witness, Kitts, the person giving the offense "began to explain and apologize; they kept talking and fussing." Whereupon, he, Kitts, told them, addressing the Cupp boys, they must go out of the house, to which they paid no attention; and he then told them if they did not go he would call the police. And then Charles said to him, if he did not like it to come out the door and they would do him up. The witness stated he then started to the front door to call the police, when Bob caught him; but he jerked loose, and Bob went before him, and when he poked his head out to look for police, Bob struck him with a stick on the head. He then took hold of the stick and Bob's arm, and they scuffled off the pavement, and while engaged Charles Cupp ran up behind and cut him across the head with a knife. Four other witnesses, including the two defendants, the other two introduced by the Commonwealth, testified as to the occurrence, and they all contradict Kitts in two important particulars. They all state he did not repeat his order for them to leave the store, for they got up and started out immediately after being told. They all likewise say he did not threaten to call the police, there being, according to their account, no necessity for it. They all agree that Charles said if you come out we will do you up. But the statement of the defendants is, that he was following them at the time. The two defendants also

testified that he came to the door and threatened to kick them all over the street, calling them "damn little devils." It was farther proved that Kitts was larger than either of the defendants, and he knew Bob was just recovering from a spell of sickness. If the evidence of the other four witnesses be true, it is not true, as stated by Kitts, he either threatened to call the police or went to the door for that purpose. But, on the contrary, the jury might have reasonably believed his purpose was a hostile one. And that theory is supported by the fact Bob attempted to hold him, by his threatening and profane language at the door, if he in fact used it, and by his going outside the door when there was no real necessity for his doing so; for there had been no hostile demonstration towards him in the house, nor if the four witnesses are to be believed, was there any hesitation on the part of the defendants to go out when told to do so, although the order was manifestly given in no very polite or conciliatory way.

The circumstances of this case, as shown by the record before us, are such as might have justified the jury in concluding that when Charles Cupp cut Kitts with the knife he believed, and had reasonable grounds to believe, his brother was in danger of losing his life, or suffering great bodily harm at the hands of Kitts. Or if not, they might and would have been fully authorized in finding that the cutting was done in sudden heat and passion. The question then arises whether appellant was, by reason of errors of law occurring, denied a fair presentation of either of these issues to the jury. Whether Kitts did or did not use

the profane and insulting language at the door, which both the defendants in contradiction of him swear he did, had an important bearing both upon the question of self-defense and whether the cutting was done maliciously or in sudden heat and passion. And it was, therefore, an error of the court to the prejudice of appellant to permit the statement of another witness that he knew the moral character of Kitts, which had not been attacked by the defense, and that he never heard him curse or use any profane language. Such testimony was calculated in an illegal and improper manner to support the witness Kitts, and discredit the testimony and defense of the accused parties.

It appears that after the argument to the jury in behalf of the defendants had closed, and just as the attorney for the Commonwealth began his argument, he, standing in front of the jury, told Kitts, the prosecutor, to come around where he was, and when he had done so, the attorney put his hands on the face of Kitts and said to the jury: "Gentlemen, look at that scar on his face; is that worth only fifty dollars?" That conduct on the part of the attorney appears to have been tolerated by the court, notwithstanding the objection of the defendants.

It is not the interest nor is it presumed to be the intention of the Commonwealth to procure the conviction of persons accused of crime by illegal means. The Criminal Code, in order to procure fair trials, prescribes the mode and order in which testimony may be given to the jury, and courts cannot afford to permit a departure therefrom when the object and effect is to give to either party an undue advantage of the other.

The Commonwealth's Attorney, in the course of his argument, stated to the jury he desired to talk about the instruction on self-defense, when the court said, addressing him in presence of the jury, "Never mind, I withdraw that instruction." And the defendants then objecting, the court said, in presence and hearing of the jury, again addressing him, "The defendants object; let the instruction go for what it is worth." If the court had failed or refused to give that instruction it would have been a reversible error. But it would have been far better for the defendants for the court to have withheld it than to accompany it with the comments made in reference to it.

Although we do not believe the court intended to do any wrong to the defendants, still they did not, nor could, in the meaning of the law, have a fair and impartial trial under the circumstances shown by the bill of exceptions to have occurred upon the trial of appellant, and the judgment is reversed for a new trial.